Soulbound Studios, LLC Mr. Selleck. Selleck, yes, hi. I'd like to reserve three minutes for rebuttal, if I may. Good morning, Your Honors. May it please the Court. My name is Evan Selleck, and I represent the appellant, James Falls, in this matter. This is a punitive class action matter, and what I'd like to do is address the Court's order, recent order, on September 27th, 2023, first, before I get into any further argument. So the first portion of the order, specifically, you'll see through the argument today that both original diversity jurisdiction is present here, as well as CAFA jurisdiction here. However, as for the original diversity jurisdiction under 1332A, it is not alleged that the member of the LLC is an actual where they reside. We've learned that after the fact. The individual's a sole proprietor, or it's a sole LLC. We've learned through Jeremy Walsh is the CEO of Soulbound Studios, who resides in Washington. That allegation is not in the complaint, in the amended complaint. So if there was an order regarding original jurisdiction, the order should be to remand it back so that that allegation could be placed in there. However, CAFA jurisdiction under 1332D is present here, and let me explain. For CAFA, there's a minimal requirement for jurisdiction for diversity jurisdiction. We have James Falls here, who is an Ohio resident, and we have an LLC, a limited liability company, Soulbound Studios, which is a Washington corporation. And as this court may know, as recently as 2021, the Ninth Circuit has adopted both the Fourth, Sixth, and other circuits' interpretation of how to determine citizenship of an LLC, an unincorporated association. And that is the same as a corporation under 1332A. So in this case, the Soulbound Studios, who is organized under the states of Washington, as alleged in the complaint, you would have minimal diversity jurisdiction under 1332D CAFA. So do I understand correctly? You're, you seemingly are confessing that you don't have adequate allegations regarding amounts in question, but you're basically relying on CAFA to get you here. Is that right? No. So I haven't gotten to the amounts in question yet. I'm about to touch there. Okay. You're just, you're pointing out the diversity of citizenship, which we couldn't find because it wasn't alleged in the complaint. So the diversity of jurisdiction is in paragraph three. The diverse jurisdiction of the two, the plaintiff and the defendants, are alleged there, in there. What's not alleged is under the original, under 1332A, the original diversity jurisdiction, the requirement that of an LLC, you have to actually allege where the constituent members are, and not just the company. And there is no allegation of where Jeremy Walsh, the CEO, resides. I have since learned he adequately alleged the citizenship elements of the LLC. Is that correct? For CAFA. For CAFA. For CAFA, correct. And not for diversity. Because CAFA only takes the other defendant. Well, CAFA takes the minimal jurisdiction. You just have to have. Right. So what you're saying is the LLC issue, that's curable. The LLC issue is curable. Right. Yes, curable under the original jurisdiction, the diversity. So tell us about the $75,000. Let's do that. So in paragraph 13 of the amended complaint, which is, let me find it in the record for you. Which is on, excuse me, 213 of the record. It references damages of an $8 million amount. And that is the amount that we have used in the complaint to reference the causal relationship of the fraud that's been alleged. That this $8 million was provided to. So that's with respect to the alleged class? Because in paragraph 17 of the complaint, there's a $20,000 allegation. So with respect to the named plaintiff, right? That's a very good question. Yes. James Falls gave $20,000 to Sova Studios. But the class under CAFA, the class allegations are that the $8 million is the total amount of the class. And how do you get to that? Well, as it's articulated in the complaint, there was a reference to an in-game or a semantics type of video sent out to everybody to generate interest in the game, which we've now learned was not actual in-game footage. And I will get to that if I can later. Yeah. But we need to know you're supposed to be here before we hear what you have to say, right? Got it. Of course. Of course. I understand that. Of course. And that they generated that $8 million based off of that, those based off of that in-game or that semantics type of thing. You're saying that they earned that? That was paid to them. Well, that was paid to them. Yeah, that $8 million was paid to them for downloadable material to be used in the game. How do you calculate the $8 million? So we were able to determine through, there's this fund called Kickstarter. I don't know if your honors are aware of it, but it's a social media type. We all play it. It's an investment type of ground roots investment type thing where someone starts and says, hey, we need, we're trying to raise investments for this. It's a public document. You can look at it. And when that's what we alleged in there, we found that about 1.6 million was made from Kickstarter and then another five point or 6.6 million made from this downloadable material that was based off of the semantics, the cinematics that was sent out to generate the interest. So that's how I was able to determine the $8 million. Let's then switch more to your merits issue. As I look at this, I look at the language and it seems to me that the language is ambiguous, which means you can't incorporate by reference. What am I missing? You're referencing specifically the breach of contract. Correct. Okay. What you're missing is the actual, what you're missing is that section five specifically discusses the third party payment processor here. And I think what your honor may be having trouble with is that it doesn't say the specific name or contract that that third party administrator has, which in this case is Zola. And what we've alleged is Zola has this policy. Okay. Well, you're a smart lawyer. When you incorporate something by reference, you got to be pretty specific, don't you? You do. But remember, we're at a motion to dismiss threshold here. I understand that. But a contract's a contract. Correct. We look at this contract and what I'm struggling with is what specific language is in the sole bounds terms of service that incorporates, I think you said Zola's, that's what, their refund policy. What is it that ties it that specifically says it's incorporated by reference? I mean, I used to practice a lot of corporate law and we always would say if there's an incorporation by reference, the terms of such and such contract are incorporated herein by reference. This doesn't say that. It's ambiguous, right? I agree with you. It is ambiguous. And if it's ambiguous under the law, don't you lose? I don't think so, your honor. Why? Under the law, you don't lose if it's ambiguous because on a motion to dismiss, you have to give deference to the non-moving party here. You have to take facts. But it still has to comply with the governing law. And as I understand the governing law here, if there's ambiguity, you lose. What am I missing? Well, I would state two things. First, if it's ambiguous, you may lose on an evidentiary hearing type issue but not on a motion to dismiss. And number two is where it says under the term... Well, forgive me, counsel, but again, if we're talking about a matter of law, not a factual issue, a matter of law, and you can look at the contract and look at it, you know, the judge is a lawyer. He says this is ambiguous. Whether it's on a motion to dismiss or not, if it's ambiguous and the law states that it doesn't work if it's ambiguous, how do you succeed on that? Well, because the Section 5 specifically references a third party. It does not reference, as you say, your honor, incorporated here in the ZOLA contract. But the purpose of not referencing that is there may be other third party contracts. This is why they specifically reference third party processor contracts. ZOLA is not the only person, not the only company that has a contract that you can go get payment from. There may be others. So the point of that is why they specifically reference a third party processor is to keep that open for other... There may be other processors that do not... Your best argument that this ambiguous language is sufficient to get you past the pleading stage. Well, I would suggest that there's nothing... I would suggest it goes towards the plausible standard of a motion to dismiss. There's nothing... Well, you have to show that, but you still have to... Even when you put all the plausibility standards and everything, you still look at... The law says it can't be ambiguous. It looks like it's ambiguous. How do you get here? Well, I think that the best argument I can give you is that the ambiguity is so that it's not as you reference it completely ambiguous, meaning... It's just sort of kind of ambiguous. Sure, your honor. I understand your point. I would submit to you that the specific language of Section 5 doesn't make it ambiguous because they are referencing a third party contract, and specifically because they don't reference incorporated here too, doesn't take it out of this idea that they are referencing this refund policy or the policies of ZOLA. I do understand your concern, and I hope I can get through your concerns today. With the time left... I guess just to follow up on the ambiguous point, you're really saying that you haven't failed to state a claim because of the ambiguity, it's plausible to conclude that ZOLA's refund policy was included. Correct. And we need facts to prove now that ambiguity out. Yes. So then you say, so in viewing this in the light most favorable to your client, as we must, because one reading of this is that it included ZOLA, that you have stated a claim. Correct. Okay. I'd like to move on briefly with the time I have to the CPA cause of action, the Consumer Protection Act cause of action. The court in this, in the motion to dismiss, there were sufficient allegations with regard to the elements of the CPA. However, what the court did here is they jumped in the minds of everyone in this case about the intent to deceive, the capacity to deceive here. We've alleged that the actual in-game play type of video that was sent out to everyone was not actual gameplay video, and it was actually... Is it falsely represented to be gameplay video? That's the allegation. Correct. Yes. That's the allegation. That it was falsely represented to be that. And that generates, as I've talked to in my brief, generates a lot of interest that the game is actually being developed. Well, we've alleged that the game was never actually being developed and that it was a video taken in a studio that you can just create without actually looking at the game and using the game. And what the court did here is they said, okay, you have all your allegations here, but you need a capacity to fact that has to be decided with evidence. The court cannot just simply make the determination based upon the allegations and the complaint if the elements are there. It's important to note that the court did not find that the elements were not sufficiently played. What the court did here is they found that there was no intent to deceive. And then finally, the final point on this is in oral argument on this motion to dismiss, the court asked me if they got rid of the breach of contract cause of action, would it actually get rid of the CPA cause of action? And I answered that question in the affirmative. And I hope you saw, I'm sure you all did in my reply brief, that I was misunderstood with the question and I answered it wrongly. I answered it completely wrong. Because if the court does decide not to go forward with the breach of contract, you still have a CPA claim based on those facts that I just alleged, not on the refund policy facts, on the specific intent to deceive type of allegations. So you can, I want to be clear because I was not clear in my oral argument at the motion to dismiss phase, I want to be clear that you can parse the two out. And if there's no other questions, I'll heed my other time for Yeah. Reserve your time. Yes. Okay. Thank you, counsel. Thank you so much for listening. Morning. Can I proceed? Yes, you may. Good morning. I'm Timothy Fitzgerald. I represent the defendant, Appali, Soulbound Studios. I want to be efficient with my time this morning. I know the court issued an order asking for discussion about the jurisdictional issues. Mr. Selick and I haven't agreed about a great deal in this matter. But one thing we do agree about is that this court does have jurisdiction. The trial court also had jurisdiction, both under 1332A and D. I'm prepared to address any remaining... And what's your best argument to that effect? Well, on the issue of diversity of citizenship, it is alleged in the complaint that we have a resident to the court, even though it wasn't alleged in the complaint, that it is a single member LLC. That single member is named Jeremy Walsh. He is a Washington resident. Is that alleged in the complaint? And a citizen. And a Washington citizen. Thank you, Judge McCullough. That is correct. On the amount in controversy under 1332A, when the court's looking at that issue, it applies the legal certainty test. There's plenty of case law on the legal certainty test. One court that has addressed that is the NAF. NAF versus Frey. It's 789 Federal 3rd 1030. And what the court said in NAF, and plenty of other cases, is that when a plaintiff files suit in federal court, we use the legal certainty test to determine whether the complaint meets 1332A's amount in controversy requirement. Under this test, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. And then the next sentence is really important. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. So where does that leave us in this case? Just like the plaintiff in the NAF case, Mr. Falls filed this case in federal court, just like the plaintiff in NAF. He invoked this court's diversity jurisdiction under 1332A. And in doing that, he implicitly alleged that the amount in controversy requirement under 1332A, meaning $75,000 in dispute, he alleged that that requirement had been met. But he also alleged that he'd been damaged in the sum of $20,000. That's true, but he didn't stop there, Your Honor. It is accurate to say that there's only one category of relief that has a dollar sign next to it, but he did not stop there. And you're actually going to the next point that I think is really, really important. How much has Mr. Falls actually placed in controversy? And do those amounts add up to $75,000? And they do. And I think that you get there just on the CPA claim alone. Let me just walk you through it. He alleges $20,000 in actual damages. He alleges treble damages under the CPA, which under Washington law, it's capped at $25,000 based on trebling. He would be capped at $25,000. So just simple arithmetic, we're at $45,000. That's just based on those two. But then he makes a claim for attorney's fees and costs. And the court has to consider all three of those categories, whether or not they have a dollar sign next to them in the complaint. I would direct the court to the case of Frist v. Swift Transportation Company of Arizona. The case site is 899 Federal 3rd, 785. Here's what it said. Among other items, the amount in controversy includes damages, compensatory, punitive, or otherwise, the cost of complying with an injunction, and I seek an injunction here, and attorney's fees awarded under fee-shifting statutes. And to be really clear about this, and I think this is potentially important depending on how the court thinks about the fee issue, the Frist court said a court must must, this is not discretionary, the court must include future attorney's fees, recoverable under statute, when you're doing the amount in controversy analysis. So let's just put a bow on this. What this means is it's not enough to just look at fees that are kind of in the can, so to speak, whenever the court does the amount in controversy analysis. You also have to look into the future and imagine a hypothetical scenario where the case goes the distance. How much fees are going to be incurred in that scenario? And if you do the math, as I said, you're over $75,000. You think Mr. Selleck's going to claim more than $15,000 or whatever before we're done? Done today, Your Honor, perhaps. Yeah, the number is $30,000. But just to bring us back to the test, this is a rules-based process. The question the court has to answer, is it legally certain that there is no scenario in which Mr. Falls, litigating the case through class certification to trial and beyond, is it legally certain that there's no possibility that he could ever require the delta between the 45 alleged in his complaint for damages and the additional 30 for attorney's fees? And of course, I mean, anyone who's engaged in class action commercial litigation gets it. This is a case in which he has defined the classes. I'm excited to see counsel agree on something. This is a wonderful thing. I'm happy to... So you agree on jurisdiction. We talked earlier with your opposing counsel about ambiguity. As you know, under the maxims of jurisprudence and all the good, equitable principles, ambiguity should be construed against the draft person. What do we do with that in this case? I understand the maxim. I respect the maxim. It's tried and true. It is a rule of law in every jurisdiction. What do you like most about it? What do I like most about it? What I like most about it is what both the magistrate judge and the district judge did with it. They made a finding that where it counts, the contract is not ambiguous. Now, what we've heard from Mr. Selick and his client is that what we have, they've parsed out of one sentence, not even the full sentence, Your Honor, just one part of one sentence in section five of the contract. Tell me specifically what you're referring to. Sure. I am on excerpt of record 108-109, Your Honor, and they have cited one sentence right in the middle of that paragraph, and they have construed that sentence to mean that there was an... Which sentence are you referring to? Any funds so raised or any portion of funds raised? Any portion of the funds raised, the letter. Okay. They have construed that sentence as what they construed in their complaint as an implied exception to the refund disclaimer that appears up and down this contract, including twice in the very paragraph that they cite. Well, let me ask about that. It seems to me that the unless clause in that sentence says pretty clearly that the funds are refundable if they are refundable under the terms of service of the third-party service through which those funds for the provision of services were procured. No question the language says that, Your Honor, but in... Well, it says that. Now, what if it had said the funds are refundable if that oak tree falls by a certain date? Now, there were questions about incorporating documents. They didn't incorporate the whole document by reference, the EXOLA contract by reference, but they just said refundable if a third-party service, that includes EXOLA. Am I saying it right? That includes if EXOLA says it's refundable. And EXOLA does say it's refundable. And my question is, why is that different from a contract saying we will give you $10,000 if that oak tree falls? There's nothing ambiguous about that. If the oak tree falls, you get $10,000. Right, except, though, to carry your analogy, Your Honor, this contract says up and down if that oak tree falls, you don't get a refund from us. And in order to... Where does it say that? I understood that the district court said that, and you say that. I can't find that language anywhere. And frankly, that doesn't seem to me to be how I would read that language. I've got it right in front of me, the language that you just So if you look at the first sentence, I appreciate the question. If you look at the first sentence of Section 5, any funds so raised shall be earned by SBS, that reference is to SBS, my client, are non-refundable. Notice that there's a reference to SBS in that sentence. Non-refundable by SBS. And if you go down to the last sentence, it says you agree any So when we're talking about... What does that statement mean, under terms of services of third-party services? What do you contend it means? Clearly means that if there's some other third party that offers a refund, you can look to that other party for a refund. Why would it say that? Why would it say something that would be so obvious in a contract between sole bound and the purchaser? Contracts say all kinds of things that are It's so unnecessary to say that if that's what it means. I understand, Your Honor, but what I'm trying to do is contextualize the statement. Judge Hinkle asked, I think, a fair question, a good question about how do we distinguish the express disclaimers of refund liability from the sentence that's buried in the middle of this paragraph that doesn't reference SBS. And it doesn't. And just respectfully, in order to credit the argument that's being made by the appellant in this case, you would need to add the words by SBS at the end of the sentence. You would have to include SBS in that sentence, the way SBS is included in the other referenced sentences that we just talked about. It's not there, and that's telling. And I think the district court got that right. The law, as I understand it, reads that this language in Section 5 must read the, in quotes, clear and unequivocal standard to incorporate terms from the other documents. What's your best argument that the language here is clear and unequivocal? I think it's clear and unequivocal that SBS is denying and disavowing any refund obligation. We see it in before and after the sentence in question. You also see it in Section 7. And it's not clear and unequivocal that having disclaimed any refund obligation three or four refunds. That is not clear and unequivocal at very best. So under the circumstances, that's the reason why you say you win, because it isn't clear and unequivocal, right? Well, at very best, it's ambiguous. I agree with that assertion. So you agree that you win. Your good friend, with whom you agree on jurisdiction, says otherwise. Yes, Your Honor. And you disagree with him about that, right? We disagree about that issue. Correct. Okay. I've got a little bit of additional time. I'd like to briefly address the CPA claim. I want to start with what the trial court framed against the context of judicial estoppel. The magistrate judge asked Mr. Falls' counsel on the record whether dismissal of the contract claim would require dismissal of the non-contract claims. And as the transcript reflects, this is excerpt of record, page 57, he thought carefully about the question. He actually said on the record, give me a minute, I'm going to think about it. And then he did. And then he acknowledged in open court that dismissal of the contract claim would take care of the complaint. Now, what we hear today for the first time, by the way, he didn't raise this argument in objecting to the R&R. You're hearing this argument for the first time on appeal. He now attempts to portray that open court admission as a mistake. But respectfully, that is not borne out by the record. The language of the amended complaint bears it out. If you look at paragraph 23 of the amended complaint, excerpt of record 199 through 200, he defines the proposed class as people who are seeking just one type of relief, and that's a refund under the SPS terms. And when he responded to our motion to dismiss, he eliminated any doubt about the issue. If you look at page 15 of the opposition brief, excerpt of record 99, he said so explicitly. Don't you agree that as a matter of law, that is not a correct statement? That in fact, as a matter of law, the Washington Consumer Protection Act claim does stand separately from the... I do not agree with that, Your Honor. I do not agree with that as alleged, and I'll tell you why. Tell me why now. Sure. I will tell you why now. His complaint under the CPA is anchored to the refund provision. And if you look at the opposition brief, this is why the magistrate judge was so keyed in on this. He said it in his brief. I'm quoting excerpt of record 99. Plaintiff defines and limits, key word, limits, the class to only those individuals who suffered injury by requesting a refund, which was improperly denied or ignored, thereby suffering harm. This is the CPA class. We're only seeking a refund. So that claim, Your Honor, is anchored to a refund. And that's why Mr. Falls' counsel admitted in open court that his client CPA claims, I'm quoting now, are based on the idea that there was a refund policy and that dismissal of the contract, I'm quoting now, would take care of the entire complaint. This isn't a situation where he said Monday and he meant Tuesday. He thought about it and he gave a very articulate and correct answer about what his client was actually after. But didn't Judge Ward all right? I mean, that's just a he just gave the wrong answer to the question. I mean, plainly, the complaint includes the allegations about the not being actual gaming and that that was the fraud, was that they had a video that was contrived or there's a better word for that. And it wasn't actual gaming. That's that claim. That's not part of the contract claim. Well, there's no question he made the allegation, but you can make all kinds of allegations. So don't go anywhere that turn into dead ends and a pleading. I mean, this isn't the motion to dismiss stage. And the allegation is there. Right. The court, you're saying he's self-limited the damages to a refund. What I'm saying is the court can affirm dismissal on any basis supported by the record. Mr. Falls anchored his complaint to the existence of a refund obligation. The magistrate asked him point blank in open court. She saw this issue. She asked him about it, and she got a very pointed answer. I get it. I guess they're lucky to have the only judge that ever made a mistake in an argument. But I mean, I can vividly recall having to double back during argument and saying, you know, I messed up the answer to that question. Now he doubled back a good bit later. I thought I must be remembering it wrong. I thought he had raised this very issue before the district judge ruled. He did not. I realize I'm out of time. If I could have. Go ahead. Enter your tingles question. That's fine. He did not, Your Honor. The first time that we're hearing the argument that it was a mistake is on appeal. We heard it for the first time in his reply brief. It wasn't even in his opening brief. He just simply hasn't addressed the issue. So if it was a thing, it's waived. I think it's waived. Yes, I do. OK, thank you, counsel. Thank you, Your Honors. Mr. Selleck, you don't have much time, and I don't want to take up much of it. But is it correct? I just remembered it wrong. Is Mr. Fitzgerald right? You first brought this, I made a mistake, argument up in the reply brief? I did bring it up in the appeal process. It was not in the objections to the recommendation. That's correct. I believe it wasn't in there because the judge, the magistrate judge, actually just dismissed the two. She didn't actually reference my comment in the objections. So to be clear, there's no reference in the objection in her report of my, she's saying, hey, you said that if I get rid of the breach of contract claim, I'm also getting rid of the CPA claim. It was not referenced in there, which is why it was not brought up on my opening brief and only brought up on responding to the appellee's reference to it. Did the district judge say it in the opinion? I guess it's been a few days since I read these. They did not reference it in the opinion. That's the point. It was just an oral argument type thing. And listen, I made a mistake, and I admit it. I was under the impression it was she was talking about specifically this refund issue where this is a separate issue. And I want to just key in real quick with my one second left here, if I may. The refund, the reason why the fraud here is so important and tied to this refund issue, because those are the damages. These people gave money based on that fraud. So now they want their money back. That's the refund issue. That's the tie-in here. So as counsel is saying, oh, there are two, you know, there's, it's completely. You did call it a refund, but which you, not necessarily a refund under the contract, but what giving back what they had paid for something that didn't exist. Correct. But you do use the word refund. So I do use the word refund. Correct, Your Honor, throughout the entire complaint, because essentially I'm trying to be at least consistent with the idea of the money that we're trying to get returned. So that's just why I use it throughout the complaint. But this is a, this is a fraud based claim. Do you agree that the, what you now refer to as a mistake that was brought up in your reply that under our case law, we can easily treat that as waived, right? I don't know. Wasn't raised below, wasn't raised in your opening brief. And as I explained to Judge Hinkle, I think it wasn't raised. The opinion, the recommendations and the actual order by the court, by the underlying court here, never brought up saying that my, the reason they're dismissing both is because of my answer to, my erroneous answer to a question. So the first time it was actually raised was in Apelli's response brief in which I replied in the reply brief. So I would say, no, it's not waived. I do understand your, your point that I should have maybe raised it or cued in on it earlier. However, it was never referenced anywhere until the Apelli's answering brief. So, and I'm, I'm out of time. So thank you all for listening and taking the time to read the papers. Thank you. Thank you, counsel. Falls versus Soulbound Studios will be submitted and we'll.
judges: WARDLAW, SMITH, UNKNOWN